1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

18

19

| | |
|---|---|
| UTILITY CONSUMERS' ACTION NETWORK and RICHARD and MARYLIN MAYCUMBER, on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>POWERNET GLOBAL COMMUNICATIONS, PNG TELECOMMUNICATIONS, INC., and DOES 1 THROUGH 25, inclusive,<br><br>Defendant. | CASE NO. 06CV1773-H (RBB)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY THIS ACTION AND GRANTING DEFENDANTS' MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS WITHOUT PREJUDICE** |

20

21

22

23

24

25

26

27

28

On August 31, 2006, Defendants Powernet Global Communications and PNG Telecommunications, Inc. (collectively "Defendants") removed this action from state court. (Doc. No. 1.) Plaintiffs Utility Consumers' Action Network and Richard and Marilyn Macumber (collectively "Plaintiffs") originally filed an action in California State Court presenting claims for violations of California's Business and Professions Code, breach of contract, violation of the California Consumer Remedies Act, negligent misrepresentation, violation of California Civil Code § 1709, unjust enrichment, and declaratory relief. (Compl. §§ 1-77.) On September 8, 2006, Defendants filed motions

1   to dismiss the complaint or stay this action and to strike the nationwide class

2   allegations.  (Doc. No.'s 3 & 4.)  Plaintiffs filed responses to the motions on October

3   2, 2006.  (Doc. No.'s 6 & 7.)  On October 10, 2006, Defendants filed replies.  (Doc.

4   No.'s 8 & 9.)  The Court held a hearing on October 16, 2006.  Alan Mansfield appeared

5   for Plaintiffs and Scott Ferrell and John O'Malley appeared for Defendants.  For the

6   following reasons, the Court DENIES Defendants' motion to dismiss or stay this action

7   and GRANTS Defendants' motion to strike the nationwide class allegations without

8   prejudice.

9                                                   **Background**

10          Plaintiff Utility Consumers' Action Network ("UCAN") is a not-for-profit public

11   interest advocacy organization with offices in San Diego and with over 30,000 members

12   in California.  (Compl., ¶¶ 1 & 11.)  Plaintiffs Richard and Marilyn Maycumber

13   (hereinafter "the Maycumbers") are California citizens and customers of Defendants,

14   subscribing to Defendants' land line service, which provides long distance

15   telecommunications services.  (Id.)  Defendants are corporations with offices in Ohio,

16   operating or conducting business across the United States.  (Compl., ¶ 11.)  At some

17   time on or before April 2003, Defendants began including a percentage charge on their

18   customers' monthly billing statements, titled "Network Access Charge," under the

19   "Taxes" heading.  (Compl., ¶¶ 2 & 29.)

20          Plaintiffs contend that Defendants' description of the Network Access Charge

21   was misleading.  (Compl., ¶ 3.)  Plaintiffs assert that Defendants represent that the

22   Network Access Charge combines "Universal Service Fund and Carrier Fees," but does

23   not define "Carrier Fees."  (Compl., ¶¶ 3 & 29-30.)  Plaintiffs claim that the Carrier

24   Fees are not government charges at all, rather they comprise three separate fees, only

25   one being government mandated.  (Compl., ¶ 29.)

26          The Federal Communications Commission ("FCC") regulates the Universal

27   Service Fund ("USF").  (Compl., ¶ 4.)  The FCC sets the level of the fee on a quarterly

28   basis, usually ranging from 8% to 11% of a customers' long distance charges.  (Id.)

1    Each telephone company pays an equal USF fee.  (Compl., ¶ 32) The purpose of the

2    USF is to make telephone services available to all households.  (Id.)  Since April 1,

3    2003, telephone companies have been allowed to pass the USF fee along to consumers.

4    (Id.)  The charge is required to be listed as a separate line item charge.  (Id.)  However,

5    Plaintiffs contend that Defendants listed the USF fee as part of the Network Access

6    Charge. (Compl., ¶¶ 30-32.) Plaintiffs assert that Defendants used the Network Access

7    Charge to recoup overhead.  (Compl., ¶¶ 29-32.)   Plaintiffs claim that the Network

8    Access Charge violated Defendants' obligation to avoid disseminating misleading

9    billing statements.  (Id.)  Plaintiffs contend that Defendants uniformly and consistently

10   misrepresented to their customers the purpose and nature of the Network Access Charge

11   and have misled customers to believe that the charges were government mandated.

12   (Compl., ¶ 7.)  Alternatively, Plaintiffs contend that if the fee was used to recoup USF

13   costs, Defendants illegally imposed the fee on thousands of customers.  (Id.)

14        Plaintiffs filed this action on behalf of a class of similarly situated customers of

15   Defendants from around the United States who were charged the Network Access

16   Charge during the relevant time period.  (Compl., ¶ 16.)  Plaintiffs assert claims for: (1)

17   violation of California Business and Professions Code ("Cal. B & P") § 17200, et seq.,

18   based on Defendants alleged acts of unfair competition; (2) breach of express and

19   implied contracts; (3) violation of the California Consumers Legal Remedies Act

20   ("CLRA") based on Defendants' alleged deceptive practices relating to the conduct of

21   a business providing goods; (4) negligent misrepresentation; (5) violation of California

22   Civil Code § 1709 based on Defendants' alleged active misrepresentations and/or

23   concealment of material facts; and (6) declaratory relief and unjust enrichment.

24   (Compl., ¶¶ 41-77.)

25        Defendants move to dismiss Plaintiffs' claims or stay this action and to strike the

26   nationwide class language from the complaint.

27   / / / /

28

**Discussion**

**A.    Defendants' Motion to Dismiss or Stay**

      **1.    Motion to Dismiss**

            **a.    Standard**

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A claim will only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. All allegations of material fact in the plaintiff's complaint shall be "taken as true and construed in the light most favorable to the nonmoving party." Tanner v. Heise, 879 F.2d 572, 576 (9th Cir. 1989); Sanders v. Kennedy, 794 F.2d 478, 481 (9th Cir. 1986). A court may not, however, "supply essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Conclusory allegations of law are insufficient to defeat a motion to dismiss. Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996). Courts grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

            **b.    Analysis**

The California Public Utilities Commission ("PUC") was created by Article XII of the California Constitution. Wise v. Pacific Gas & Electric Co., 77 Cal.App.4th 287, 293 (1999). It is the administrative agency charged with regulating public utilities in California. Southern California Edison v. Public Utilities Commission, 85 Cal.App.4th 1086, 1091 (2000). "Pursuant to the California Constitution, the PUC has broad authority to regulate utilities. Ford v. Pacific Gas & Electric Co., 60 Cal.App.4th 696, 700 (1997) (citing Cal. Const., art. XII, §§ 1-6; San Diego Gas & Electric Co. v. Superior Court, 13 Cal.4th 893, 914-15 (1996) (hereinafter "Covalt," the real party in interest)). Under the Public Utilities Act, Cal. Pub. Util. Act § 201 et seq., the

1   California Legislature authorized the PUC to regulate and supervise all public utilities

2   located in the state, and gave the PUC the power to "'do all things . . . which are

3   necessary and convenient in the exercise of such power and jurisdiction.'" Id. (citing

4   Cal. Pub. Util. Act § 701). "The PUC is 'not an ordinary administrative agency, but a

5   constitutional body with broad legislative and judicial powers.'" Southern California

6   Edison, 85 Cal.App.4th at 1097 (quoting Wise v. Pacific Gas & Electric Co., 77

7   Cal.App.4th 287, 300 (1999)). The PUC is also charged with creating accounts and

8   fixing rates for public utilities which are subject to the PUC's jurisdiction. Id.

9         Judicial review of PUC decisions is generally narrow in scope and manner. Id.

10  Section 1759 California's Public Utilities Code states:

11         No court of this state, except the Supreme Court and the court of appeal,
           to the extent specified in this article, shall have jurisdiction to review,
12         reverse, correct, or annul any order or decision of the commission or to
           suspend or delay the execution or operation thereof, or to enjoin, restrain,
13         or interfere with the commission in the performance of its official duties,
           as provided by law and the rules of court.
14
    Cal. Pub. Util. Code § 1759(a). However, § 1759 does not grant the PUC exclusive
15
    jurisdiction over every action by or against California public utilities. Orloff, 31
16
    Cal.4th 1138. "[T]he mere possibility of, or potential for, conflict with the PUC is, in
17
    general, insufficient in itself to establish that a civil action against a public utility is
18
    precluded by section 1759." Id. Section 1759 does not insulate or protect California
19
    public utilities from all civil actions. Id. at 207-08.
20
          Section 2106 of the Public Utilities Code provides a private remedy for aggrieved
21
    parties.[1] Waters v. Pacific Telephone Co., 12 Cal.3d 1, 4 (1974). That section
22
    provides:
23
           Any public utility which does, causes to be done, or permits any act,
24         matter, or thing prohibited or declared unlawful, or which omits to do any
           act, matter, or thing required to be done, either by the Constitution, any
25         law of this State or any order or decision of the commission, shall be liable
           to the persons or corporations affected thereby for all loss, damages or
26         injury caused thereby resulting therefrom. If the court finds that the act or

27  _____

28  [1]  Section 2106 is not the only provision of the California Public Utilities Code
    authorizing civil actions against public utilities, other provisions include §§ 2101 and
    2102. See Orloff, 31 Cal.4th 1138.

- 5 -                                                           06cv1773-h (rbb)

1    omission was wilful, it may, in addition to the actual damages, award
2    exemplary damages.  An action to recover for such loss, damage, or injury
     may be brought in any court of competent jurisdiction by an corporation
3    or person.

4   Cal. Pub. Util. Code § 2106.  Recovery by an aggrieved party under § 2106 does not

5   affect the State's right to recover penalties nor the PUC's ability to punish the public

6   utility for contempt.  See Orloff, 31 Cal.4th 1144.  This section has been limited by the

7   California Supreme Court, which ruled that § 2106 was limited to "those situations in

8   which an award of damages would not hinder or frustrate the commission's declared

9   supervisory and regulatory policies."  Ford, 60 Cal.App.4th at 701 (quotation omitted);

10  see also Waters, 12 Cal.3d at 4.

11          California courts have established guidelines for determining whether to exercise

12  jurisdiction, including: (1) whether the PUC has the authority to regulate the issue; (2)

13  whether the PUC exercised its authority; and (3) whether exercise of jurisdiction would

14  hinder or interfere with the PUC's policies on that issue.  Anchor Lighting v. Southern

15  California Edison Co., 142 Cal.App.4th 541, 546 (2006) (citing Covalt,  13 Cal.4th at

16  923-26).

17          Defendants argue that the entire action should be dismissed because it would

18  interfere with or undermine the authority of the PUC in violation of Cal. Pub. Util. Code

19  § 1759.  However, viewing the complaint in a light most favorable to Plaintiffs, the

20  Court cannot conclude that this action is barred by Cal. Pub. Util. Code § 1759.  Section

21  2106 provides a private right of action by private individuals against public utilities

22  operating in California.  Furthermore, the PUC only has authority to regulate intrastate

23  commerce within California.  (Packer Decl., Ex. A at 80.)  Plaintiffs present claims on

24  behalf of a proposed nationwide class.  As such, the PUC would not have jurisdiction

25  over the claims involving interstate communications.  Additionally, the courts have

26  exclusive jurisdiction over certain of Plaintiffs' claims, including their claims for

27  violation of Cal. B & P § 17200, et seq., and the CLRA.  See Cal. B & P § 17204 and

28  Cal. Civ. Code §§ 1770 and 1780.  Finally, at this time the Court cannot conclude that

    this action would interfere with the PUC's policies or jurisdiction.   See  Anchor

1  Lighting, 142 Cal.App.4th at 546. Questions of unfair business practices, deception and

2  fraud are properly before this Court. The PUC's one-time approval of the tariff setting

3  Defendants' rates does not preclude this Court's jurisdiction. See e.g. Covalt, 13

4  Cal.4th at 893. Therefore, viewing the complaint in a light most favorable to Plaintiffs,

5  the Court DENIES Defendants' motion to dismiss the complaint.

6          **2.     Motion to Stay Action**

7          As an alternative to dismissal, Defendants argue that the Court should stay the

8  action under the primary jurisdiction or equitable abstention doctrines.

9          The primary jurisdiction doctrine permits a court to stay or dismiss an action

10  pending resolution of issues pertinent to the action by an administrative agency. See

11  Wise, 132 Cal.App.4th at 725. The doctrine should not be confused with the exhaustion

12  of administrative remedies requirement. Syntek v. Semiconductor Co., Ltd. v.

13  Microchip Tech., Inc., 307 F.3d 775, 781 (citing Brown v. MCI WorldCom Network

14  Serv.'s, Inc., 277 F.3d 1166, 1173 (9th Cir. 2002)). Primary jurisdiction "applies where

15  a claim is originally cognizable in the courts, and comes in to play whenever

16  enforcement of the claim requires the resolution of issues which, under a regulatory

17  scheme, have been placed within the special competence of an administrative body; in

18  such a case the judicial process is suspended pending referral of such issues to the

19  administrative body for its views." Farmers Ins. Exchange v. Superior Court of Los

20  Angeles County, 2 Cal.4th 377, 390 (1992) (quotations and internal emphasis omitted).

21  There is no strict formula for courts to apply the doctrine. Id. at 391 (citing U.S. v.

22  Western Pac. R. Co., 352 U.S. 59, 64 (1956)). In its analysis, the court should

23  determine to what extent the policies of the agency are implicated in the case before it.

24  Id. Courts generally consider several factors, including: "(1) the need to resolve an

25  issue that (2) has been placed by Congress within the jurisdiction of an administrative

26  body having regulatory authority (3) pursuant to a statute that subjects an industry or

27  activity to a comprehensive regulatory authority that (4) requires expertise or

28  / / / /

1  uniformity in administration."   Syntek, 307 F.3d at 781 (citing U.S. v. General

2  Dynamics Corp., 828 F.2d 1356, 1362 (9th Cir. 1987)).

3          Equitable abstention is a court-developed doctrine in California.   Desert

4  Healthcare Dist. v. Pacificare FHP, Inc., 94 Cal.App.4th 781, 795 (2001).  Under the

5  doctrine, California courts should defer issues of complex economic policy to the

6  legislature. Id. (citing Freeman v. San Diego Assn. of Realtors, 77 Cal.App.4th 171,

7  203 n. 35 (1999)).

8          Defendants argue that under either primary jurisdiction or equitable abstention,

9  this Court should stay the litigation of this matter pending resolution or comment by the

10 PUC.  Plaintiffs contend that because the issue is not currently before the PUC, and

11 because of the proposed nationwide class, application of the doctrines and a stay of this

12 litigation is inappropriate.  Under these circumstances, the Court concludes that a stay

13 of the litigation is not warranted and DENIES Defendants' motion.

14 **B.      Defendants' Motion to Strike**

15         Upon motion by a party, the court may strike "any insufficient defense or any

16 redundant, immaterial, impertinent, or scandalous matter" from any pleading. Fed. R.

17 Civ. P. 12(f). "'[T]he function of a 12(f) motion to strike is to avoid the expenditure of

18 time and money that must arise from litigating spurious issues by dispensing with those

19 issues prior to trial.'" Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)

20 (quoting Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983), rev'd

21 on other grounds, 510 U.S. 517 (1994)).  Matter is "immaterial" where there is no

22 important or essential relationship to the claims or defenses being pleaded. Id. at 1527

23 (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure 2d §

24 1382, at 706-11 (1990)).  "Impertinent" matter is that which is not necessary or does not

25 pertain to the issues at hand. Id.

26 / / / /

27 / / / /

28 / / / /

1        Rule 12(f) motions to strike are generally disfavored.  See e.g., Stanbury Law

2   Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000).  However, the court may grant the

3   motion to streamline the ultimate resolution of the action and focus the jury's attention

4   on the real issues.  Fantasy, Inc., 984 F.2d at 1528.

5        Defendants move to strike the nationwide class allegations contained in

6   paragraphs 16 and 27 of Plaintiffs' complaint, among others ("and such other states as

7   the Court finds appropriate").  While a court sitting in diversity may "assume

8   jurisdiction over the claims of plaintiffs whose principal contacts are with other states,

9   it may not use this assumption of jurisdiction as an added weight in the scale when

10  considering the permissible constitutional limits on choice of substantive law." Phillips

11  Petroleum Co. v. Shutts, 472 U.S. 797, 821 (1986).  Under Shutts, the forum state must

12  have a "'significant contact or significant aggregation of contacts' to the claims asserted

13  by each member of the plaintiff class, 'contacts creating state interests,' in order to

14  ensure that the choice of [the forum state's] law is not arbitrary or unfair." Id., 472 U.S.

15  at 821-22.  Applying the forum state's laws to parties located beyond the state's

16  borders, who have no relationship with the forum state, would abrogate the parties'

17  rights under the Due Process and Full Faith and Credit clauses of the United States

18  Constitution.  Id. at 822 (citation omitted).

19       "A federal court sitting in diversity must look to the forum state's choice of laws

20  rules to determine the controlling substantive law."  Zinser v. Accufix Research

21  Institute, Inc., 253 F.3d 1180, 1887 (2001) (citation omitted).  California applies a

22  three-step approach. Id.  First, the proponent of the foreign law must demonstrate that

23  the law of the other states conflict materially with California law.  Id. (citing Wash.

24  Mut. Bank v. Superior Court, 24 Cal.4th 906 (2001) (citations omitted); In re Pizza

25  Time Theatre Sec. Litig., 112 F.R.D. 15, 19 (N.D.Cal. 1986)).  If the laws materially

26  conflict, the district court must analyze the state's interests in having their laws applied.

27  Id.  If each state has an interest in having its own laws applied and they materially

28  / / / /

1  conflict, then the court must determine which state's interests would be more impaired

2  if the court did not apply its laws.  Id.

3       Plaintiffs seek to apply California law to a proposed nationwide class, many of

4  whom apparently have had no contact with the forum, as Defendants are based in Ohio

5  and providing telecommunications services across the country.   Under these

6  circumstances, application of California law to the entirety of the claims of the proposed

7  nationwide class would violate the class members' due process rights.  Shutts, 472 U.S.

8  at 821-822.  Defendants argue and have come forward with sufficient information to

9  demonstrate that the laws of California potentially materially conflict with the laws of

10  every other state, at least as to some of Plaintiffs' claims.  Plaintiffs have not shown

11  how the application of California law would satisfy constitutional due process.  See

12  Zinser, 253 F.3d at 1187.  Accordingly, the Court GRANTS Defendants' motion to

13  strike the nationwide class allegations without prejudice.  Plaintiffs may, within thirty

14  days from the date this order is stamped "Filed," file an amended complaint addressing

15  the deficiencies in the proposed class language addressed in this order.

16                              **Conclusion**

17       For the reasons stated above, the Court **DENIES** Defendants' motion to dismiss

18  or stay this action and **GRANTS** Defendants' motion to strike without prejudice.

19  Plaintiffs may, within thirty days from the date this order is stamped "Filed," file an

20  amended complaint addressing the deficiencies in the proposed class language

21  addressed in this order.

22       IT IS SO ORDERED

23  DATED:  October 20, 2006

24                                       _____
                                         MARILYN L. HUFF, District Judge
25                                       UNITED STATES DISTRICT COURT

26

27

28  **COPIES TO:**


                                    - 10 -                           06cv1773-h (rbb)

1  John W. Hanson
   Rosner Law and Mansfield
2  10085 Carroll Canyon Road
   San Diego, CA 92131
3
   Ward J. Lott
4  Call Jensen and Ferrell
   610 Newport Center Drive, Suite 700
5  San Diego, CA 92660

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

06cv1773-h (rbb)